## CHICAGO TITLE & TRUST CO. v. FOX THEATRES CORPORATION.

District Court, S. D. New York.
May 22, 1936.

Cadwalader, Wickersham & Taft, of New York City (Cornelius W. Wickersham, of New York City, of counsel), for claimants.

Basil O'Connor, of New York City (Henry Brill and Herbert R. Berk, both of New York City, of counsel), for receiver of Fox Theatres Corporation.

MANTON, Circuit Judge, designated to sit in the District Court.

Pursuant to an order of this court, the Philadelphia Company for Guaranteeing Mortgages filed a third amended proof of claim in the receivership proceedings of the Fox Theatres Corporation (Fox), on November 19, 1934, for $389,436.90. The special master allowed the claim for $30,-134.06. On this motion to confirm his report, the claimant seeks an increase of this award.

Market-Seventeenth Streets Corporation (Market), a wholly owned subsidiary of Fox, borrowed $1,800,000 from the Philadelphia Savings Fund Society, and gave its bond and mortgaged its building to secure the loan. Before making the loan, the mortgagee had required Market to secure a guaranty of the payment of principal and interest. The claimant agreed to make this guaranty for an advance payment of $27,000 and a premium of $9,000 in advance yearly. As a condition of this agreement, it required that Fox Theatres Corporation guarantee to the claimant the payment of interest and taxes on the property and the yearly advance premium Market had agreed to pay for the policy of guaranty.

Market has defaulted in interest and taxes to the amount of $445,962.71, and has failed to pay the premiums for two years. There has been collected $74,525.81 in rents which was applied to the charges against the property. The Philadelphia Company seeks to enforce its agreement with Fox for the difference—$389,436.90. The claimant has not paid on its guaranty to the mortgagee, except $30,134.06, in addition to the rents. Receivers have been appointed for the claimant, and the amended claims have been filed by them. As a part of the reorganization plan of claimant, all the company's assets have been transferred to another company, as operating trustee for claimant's creditors, and that company has been allowed to intervene as a co-claimant with the receivers.

The master found Fox's agreement with claimant to be one of indemnity only, and allowed the claim in the amount of loss sustained—$30,134.06. He disallowed the claim for unpaid premiums "as no claim, the liability of which arose after * * * the date set by the order of this court as the last day for presentation of claims, may be allowed."

Claimant contends that Fox's obligation to it is an absolute guaranty of payment, imposing on Fox an absolute liability for the whole amount, in default, immediately upon the default of Market. The agreement between Fox and Philadelphia Company provides: "Fox Theatres Corporation for itself and its successors does hereby guarantee unto the said Philadelphia Company * * * the payments of * * * the interest * * * when the same shall fall due, property taxes assessed against said premises before the first of July in each year * * * premiums * * * when due."

Claimant's purpose in securing this guaranty from Fox was to shift the risk consequent to claimant's guaranty to the mortgagee. Its argument that it wished to guard against liability to the mortgagee is unconvincing when advanced, as here, for the purpose of proving a claim to the full amount at a time when its own eventual liability to the mortgagee is uncertain. Claimant's reorganization plan provides for appraisals of property on which claimant has guaranteed the mortgage to determine, as the amount of claims to be allowed against claimant, the difference between the value of the property and the amount of mortgage, plus arrears in interest. Thus the amount which the mortgagee may eventually prove against it is uncertain. While there is a like uncertainty as to the percentage which creditors of Fox will re-

cover on the face amounts of their allowed claims, this cannot be given weight in determining the instant question.

■ That is settled, not by the formal words used, but by the nature of the transaction as determined in its setting. Claimant had outstanding against it a contingent liability to the mortgagee. This was dependent on Market's default. To protect itself, not to further secure the mortgagee, claimant had Fox "guaranty" that Market would not default. It should be noted that Market had no obligation to pay anything to claimant, except the guaranty premiums. It had promised to pay the interest on the mortgage to the mortgagee and the taxes to the proper parties. Claimant was not yet a creditor of Market. After claimant paid on its liability to the mortgagee, it had a right to reimbursement from Market for that amount. In that amount the master has allowed its claim without objection. That is all it is entitled to because of Market's default on its mortgage obligations.

■ There can be no technical guaranty of payment such as that for which claimant contends unless a party other than the guarantor is principally liable to the party secured. Pennsylvania Steel Co. v. N. Y. City Ry. Co., 198 F. 721, 750, 751 (C. C.A. 2); Hall v. Equitable Surety Co., 126 Ark. 535, 191 S.W. 32. The authorities advanced by the claimant are not in point, because they cover the situation where the promise of the guarantor and the obligation guaranteed both ran to the party secured. First National Bank v. Jones, 219 N.Y. 312, 114 N.E. 349, and Westchester Mortgage Co. v. Thomas B. McIntire, Inc., 168 App.Div. 139, 153 N.Y.S. 437 (2d Dept. 1915), will serve to point out the distinction. There the defendant had guaranteed that a maker of a note would pay at maturity. A party who had indorsed the note and negotiated it would be liable to subsequent holders if the note were dishonored. If he had not paid the holder, and was bankrupt and so could not, if he were attempting to collect for himself from the guarantor, he would be in a position similar to that of the claimant

here. Obviously, comments made when the payee or a holder were suing would not be relevant in the case proposed.

Although Schneck v. Lewis, 121 Misc. 370, 201 N.Y.S. 282 (Sup.Ct.N.Y.Co.1923), presents a relationship similar to that of the parties at bar, and a ruling which supports claimant's position, the plaintiff there had paid before suing and was not seeking security against a liability which he could not discharge.

■ There is no compulsion on the court to accept the particular terms used without regard to the circumstances of their use. See Pan-American Bank & Trust Co. v. National City Bank of New York, 6 F.(2d) 762, 766 (C.C.A. 2); Border National Bank v. American Nat'l Bank, 282 F. 73, 78 (C.C.A. 5). This is especially so in the field of guaranties. See 44 Yale 1053 [1935]. It seems very plain that the agreement Fox and claimant made here was to indemnify claimant, as the master held.

Even if the claimant's argument were followed, so that Fox could be held to have agreed to be liable to claimant as soon as claimant became liable to the mortgagee, there is the fact that under the reorganization plan of claimant its eventual liability is not yet certain. This same uncertainty would attach to its claim against Fox, and it could be disallowed for this reason.

As to the two yearly premiums, these were due directly to claimant. Since its obligation on its guaranty has been construed to cover the mortgagee's demand that it pay the defaults during these years, the guaranty was in force during the time for which the premiums are demanded. As to the provability of these claims, Pennsylvania Steel Co. v. N. Y. C. Ry. Co., 198 F. 721, 753 (C.C.A. 2), seems to settle that they should be allowed. Samuels v. E. F. Drew & Co., 292 F. 734 (C. C.A. 2), is not to the contrary, since it merely held that the measure of damages for breach of an executory contract should be taken at the time of the receiver's appointment. The claim should be allowed in the sum of $48,134.06.