OPINION
{¶ 1} Plaintiff-appellant Bank One, N.A., n/k/a J.P. Morgan Chase Bank, N.A., appeals from a summary judgment rendered on its claim for damages arising from defendant-appellees Mark and Georgiann Smith's default on a commercial loan.
 {¶ 2} Bank One contends that the trial court erred by holding that the Smiths' personal guaranty of a promissory note in the principal amount of $35,000.00 did not extend to a subsequent promissory note in the principal amount of $65,000. We agree. Although the initial note provided for the possibility that it might be unilaterally modified by Bank One, when that provision is construed strictly against Bank One, as the drafter, and liberally in favor of the Smiths, as guarantors, as required by principles of construction, and applying the doctrine ofexpressio unius est exclusio alterius, we conclude that it did not authorize Bank One and PIC Photo Finish, Inc., the note obligor, to increase the principal amount of the note obligation guaranteed by the Smiths, without the assent of the Smiths, who did not sign the $65,000 note as guarantors. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In 1999, PIC Photo Finish, Inc., executed a Bank One business credit application and agreement in which it requested a line of credit in the amount of $35,000.00. The Smiths personally guaranteed the repayment of the amounts loaned, evidenced by a promissory note executed by PIC Photo Finish, Inc., and guaranteed by the Smiths, individually, who signed their names, individually, as guarantors. The 1999 note included the following provision:
 {¶ 4} "Each Guarantor authorizes Bank One, without notice or demand and without releasing Guarantor's liability under this Guaranty, from time to time, (a) to alter, compromise, renew, extend, accelerate, or otherwise change at one or more times the time for payment or other terms of the Note, including increases and decreases in the rate of interest on the Note, and to grant repeated extensions which extensions may be for longer than the original Note term[.]"
 {¶ 5} PIC Photo Finish, Inc., executed a second promissory note, in the principal amount of $65,000.00, on March 27, 2003. Like the first promissory note, this note was signed by Mark and Georgiann Smith as the President and Vice-President of PIC Photo Finish, Inc., respectively, but the 2003 note was not signed by the Smiths individually as guarantors.
 {¶ 6} PIC Photo Finish, Inc., defaulted on the obligation evidenced by both notes, and Bank One brought this action on the notes. In a partial summary judgment (as to liability), the trial court held that the Smiths were liable as guarantors on the obligation evidenced by the 1999 note, but not on the obligation evidenced by the 2003 note. After the announcement of its decision, and after receiving information from the parties concerning the amount of the original obligation in default, the trial court rendered judgment for Bank One against the Smiths, jointly and severally, in the amount of $36,714.79 plus post-judgment interest and costs.
 {¶ 7} From the judgment of the trial court, Bank One appeals.
 II {¶ 8} Bank One's assignments of error are as follows:
 {¶ 9} "WHETHER THE TRIAL COURT ERRED WHEN IT FOUND THAT THE DEFENDANT/APPELLEES MARK SMITH AND GEORGIANN SMITH DID NOT PERSONALLY GUARANTY THE $65,000.00 PROMISSORY NOTE."
 {¶ 10} "WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT HELD THAT THE DEFENDANTS/APPELLEES MARK SMITH AND GEORGIANN SMITH DID NOT PERSONALLY GUARANTY THE $65,000 PROMISSORY NOTE."
 {¶ 11} Although Bank One's First Assignment of Error is couched in terms of a legal error, and its Second Assignment of Error is couched in terms of abuse of discretion, both raise the same issue: whether the Smiths were liable as guarantors on the 2003 promissory note. Neither party presented evidence on this point beyond the instruments themselves, so the proper construction thereof is a question of law, suitable for summary judgment.
 {¶ 12} The 1999 note includes the following provisions:
 {¶ 13} "The undersigned (each a `Guarantor') jointly, severally and in solido and unconditionally guarantees payment of and agrees to pay to the order of Bank One all amounts of principal interest, fees, charges and other amounts at any time outstanding under the Note or any extension, renewal or modification thereof.
 {¶ 14} "Each Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in full force.
 {¶ 15} "Each Guarantor authorizes Bank One, without notice or demand and without releasing Guarantor's liability under this Guaranty, from time to time, (a) to alter, compromise, renew, extend, accelerate, or otherwise change at one or more times the time for payment or other terms of the Note, including increases and decreases in the rate of interest on the Note, and to grant repeated extensions which extensions may be for longer than the original Note term[.]"
 {¶ 16} The 2003 note includes the following provision:
 {¶ 17} "This Note is a renewal of an earlier loan or credit extension to Borrower from Lender, or from a Bank One Corporation affiliate which transferred the loan to Lender, and is identified in Lender['s] or the affiliate's internal records as account number 001898380000519586. This Note shall not release or affect the liability of any guarantor, surety or endorser of the loan, or release any security interest granted by owner of any collateral securing the loan. This Note shall be considered a modification only, and not a novation."
 {¶ 18} It is undisputed that the Smiths personally guaranteed the 1999 note. It is likewise undisputed that the Smiths did not personally guarantee the 2003 note, but rather signed the note on behalf of PIC Photo Finish, Inc., the obligor, in their capacity as corporate officers of the obligor.
 {¶ 19} Although the 2003 note is declared by the parties thereto to be a "renewal" of the 1999 note, that declaration is not binding upon the Smiths, who were not parties to the 2003 note, but merely guarantors of the 1999 note.
 {¶ 20} The issue is whether the Smiths, in guaranteeing the 1999 note, agreed that the principal amount thereof, and their consequent liability as guarantors, could be changed without their assent. Otherwise, mere knowledge of the change, with no action upon it by the guarantors, will not work a ratification.Horr, Warner Co. v. Hawkhurst (1876), 7 Ohio Dec. Rep. 168, 170: "Positive dissent by the defendants was not required to avoid liability or action, mere knowledge of the change, with no action upon it by the defendants would not work a ratification."
 {¶ 21} Unquestionably, the 1999 note provides that its terms can be altered without the consent of the guarantors in some respects. The question is whether an increase in the principal obligation evidenced by the note is included within the scope of the alterations that can be made to the 1999 note without the assent of the Smiths.
 {¶ 22} In the construction of the 1999 note — specifically, the provision for its unilateral alteration by Bank One — the Smiths are entitled to the benefit of two principles of contract construction. The most general of these is the principle that a contract should be construed strictly against the drafter of the contract. Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311,341, 667 N.E.2d 949. There can be no question that Bank One drafted the 1999 instrument, as evidenced by the fact that its corporate logo is printed thereon. The more specific principle is that a contract of guaranty is to be construed in favor of the guarantor. Liquidating Midland Bank, Trustee v. Stecker (1930),40 Ohio App. 510, 516, 9 Ohio Law Abs. 101, 179 N.E. 504.
 {¶ 23} Of further relevance to the issue of contract construction in this case is the principle expressio unius estexclusio alterius, meaning that the expression in a contract of one or more things of a class implies the exclusion of all others not expressed. 18 Ohio Jur. 3d 29, Contracts, § 127. This principle was applied in Uram v. Uram (1989),65 Ohio App.3d 96, at 98, in the construction of a provision in a decree of dissolution of a marriage that: "Husband agrees to pay the costs of sending Aron and Alison to college * * * including the costs of such items as tuition, fees and books * * *." The court held that this provision, by expressly including among the costs of sending the children to college, tuition, fees and the cost of books, was limited to those costs, by application of the principle of expressio unius est exclusio alterius.
 {¶ 24} In our view, and considering the principles of construction that favor the Smiths in the case before us, the proper result in this case is similar to the result in Uram v.Uram, supra. The provision in the 1999 note upon which Bank One relies for the authority to bind the Smiths, as guarantors, to an alteration in the terms of the note to which they do not assent, includes "alter[ing] * * * or otherwise chang[ing] at one or more times the time for payment or other terms of the Note, includingincreases and decreases in the rate of interest on the Note, andto grant repeated extensions which extensions may be for longerthan the original Note term[.]" (Emphasis added.) By expressly stating certain alterations or changes in the terms of the note that are included within the scope of those alterations or changes that Bank One can impose without the Smiths' assent, other alterations or changes, especially a change as significant as an increase in the amount of the principal obligation that the Smiths are guaranteeing, are implicitly not included within that scope.
 {¶ 25} We conclude, as a matter of law, that the Smiths are not bound as guarantors of the 2003 promissory note, so that the trial court properly found their guarantee limited to the original, $35,000 extension of credit evidenced by the 1999 promissory note. Accordingly, both of Bank One's assignments of error are overruled.
 III {¶ 26} Both of Bank One's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Grady, P.J., concurs.